NOAH WOODS, *scire facias*, *vs.* LORENZO D. COOKE.

*Scire Facias. Tender. Demand. Officer's return—amendment of.*

Where a trustee was charged conditionally, that "if the plaintiff pay the trustee $2000 within sixty days after final judgment, then the trustee is to deliver to the officer" certain specified property, holden by the trustee as security, and during the sixty days the trustee disposed of a portion of the property and appropriated the proceeds toward the payment of his claim, a tender by the plaintiff of simply the balance due was held sufficient.

When by a previous disposition of such property the trustee renders himself unable to deliver it upon demand, it is not necessary for the maintenance of *scire facias* that the officer make a demand.

A return of *nulla bona*, dated the second day after the return day of the execution, taken in connection with a previous return by the officer that by virtue of the execution he had made demand upon the trustee, shows with sufficient certainty that the search for goods was made in the life-time of the execution, and that what was done by the officer was done by virtue of it.

The court may allow an officer to amend his return upon execution, by adding his certificate of *nulla bona* after the return day of the execution.

It is no defense to an action of *scire facias*, that the note, upon which the original suit was instituted, was afterwards paid by an indorser, and the suit carried on for the benefit of such indorser in the name of the payee.

The defendant in *scire facias* cannot show, in order to reduce the damages, that the adjudication of the court in the original action was erroneous.

ON REPORT.

*Scire facias* against Lorenzo D. Cooke as trustee of Barker A. Neal. The disclosure of this defendant shows that he and Barker A. Neal made, some time before, a joint purchase of $7,000 worth of cigars, for which they paid down $1,000 each, and gave a note for $5,000, of which Cooke afterward paid the whole, thus leaving an indebtedness from Neal to him of $2,500. Cooke sold a part of the cigars to one Stanwood and took a note for $1,000, which at the time of the disclosure was considered perfectly good, and was then in Cooke's hands. Cooke also held under his control the unsold cigars. Neal had previously subscribed to build one-eighth of the schooner "Marion Draper" which would cost about $2,000, and had paid toward it $1,600, and it was agreed that his propor-

tion of the ship's earnings should be appropriated to the payment of the balance. Cooke disclosed that this one-eighth of the " Marion Draper " stood in his name as collateral security for Neal's indebtedness to him.

The adjudication of the court upon this disclosure was as follows : " The trustee charged conditionally, namely : if the plaintiff pay the trustee $2,000 and interest from April 19, 1865, within sixty days after final judgment, then the trustee is to deliver to the officer one-half of the cigars and the interest in the vessel."

Judgment was entered up March 26, 1869, and execution issued the following day. Before the expiration of the sixty days Cooke sold the remainder of the cigars. On the 17th day of May, 1869, plaintiff made a tender of $608.26, this being the amount which he claimed was due the defendant, allowing interest at six per cent. The defendant claimed that by agreement with Neal he should receive interest at the rate of nine per cent.

The following return appears upon the execution :

" Kennebec, ss.                                    May 29, 1869.

By virtue of this execution I have this day demanded of L. D. Cooke, trustee within-named, the goods, effects, and credits of the within-named debtor, viz. : all his, said debtor's interest in the vessel or schooner Marion Draper in the hands and possession, of the said trustee, and named in the order of court, which he then and there refused to deliver to me, the said one-half of the cigars being accounted for as so much money now in the hands of said trustee, and retained by him.

GEORGE WHEELER, Deputy Sheriff."

The execution was filed in the clerk's office with no further return, and, subsequently, by leave of court, to the granting of which defendant objected, the officer made the following additional return :

"Kennebec, ss.                                    June 29, 1869.

I certify that I have made diligent search for the property of the within-named debtor, but could find none, so I return this execution is no part satisfied.

GEORGE WHEELER, Deputy Sheriff."

The defendant introduced testimony in this case showing that the note upon which the original suit was instituted, was paid after suit was brought by one of the indorsers and the action carried on by consent of the payee for the benefit of that indorser, and also that, after he had been charged as trustee, Stanwood had gone into bankruptcy and but twenty per cent. had been received upon the $1,000 note.

This case has been before the law court once before on demurrer to the declaration. See 58 Maine, 282.

*J. Baker,* for the plaintiff.

The amendment of the officer's return being legally made, the return of *nulla bona* on the 29th day of June, 1869, two days after the expiration of the execution, was sufficient. *Austin* v. *Goodale,* 58 Maine, 109.

The claim of defendant to be allowed for loss on the Stanwood note and for nine per cent interest was idle. The decree of the court, not excepted to, was conclusive ; *res adjudicata.*

*A. Libbey,* for the defendant.

I. Plaintiff must show a legal demand on the trustee, which could not be made until payment or tender of sum fixed by the court. The amount of $2,000 and interest from April 19, 1865, to May 17, 1869, was $2,489.34. That amount should have been tendered before demand. But the return shows no legal demand, as the officer demanded Neal's interest in the schooner only.

II. The execution was not returned unsatisfied, and even if it were competent for him to amend it by leave of court, then the return is a nullity, for it was dated two days after the return day. The return must appear to be made during the life of the execution, or it is void. *Prescott* v. *Wright,* 6 Mass. 20.

The case is not like *McLellan* v. *Codman,* 22 Maine, 308. In the case at bar the whole return may be true and the officer may have made no search or effort to collect till after the 27th of June.

III. The attachment was dissolved by payment of the note after suit. Taking judgment in the suit after the note was paid was a fraud upon the trustee.

IV. If the suit can be maintained, defendant is entitled to have the $2,500 paid by him for Neal, less one-half received on the Stanwood note, allowed.

WALTON, J.  The defendant claims that he is not liable for the value of the property on account of which he was adjudged trustee, for various reasons.

1. Because the full amount of his debt ($2,000 and interest) was not tendered him.  Such a tender was not necessary.  After he was adjudged trustee and before the property was demanded of him, he had sold enough of it to pay all of his debt and interest except $608.26, and this amount was tendered him.  Why should the plaintiff be required to tender him $2,000 and interest when there was only $608.26 due?  Why should the defendant be allowed to exact a tender which he could not legally accept?  He should not.  The claim is as unfounded in law as it is destitute of reason.  Mr. Benjamin testifies that the defendant agreed to account for the cigars, most if not all of which he had before that time sold and received the money for, as so much money in his hands.  He says they figured up the amount they came to, and that he, the defendant, agreed with Mr. Bradstreet that that should be received as so much money as a part of the tender; that Mr. Bradstreet tendered the balance to make out $2,000 and interest from April 19, 1865; and that this balance was $608.26; that no objection was made by the defendant as to the amount figured up in his hands that belonged to the debtor, Neal, or that $608.26, did not make up the $2,000 and interest, according to the order of the court; that what the defendant then objected to was the order of the court.  And we do not understand the defendant as denying that such a tender was made.  He pretends not to recollect precisely how the sum tendered him was arrived at, but he does not deny that it was the full balance due him, according to the judgment of the court, and interest reckoned at the rate of six per cent per annum, after deducting therefrom the money in his hands.  In our judgment such a tender was all that was legally required of

the plaintiff. The law is well settled that a tender which cannot be legally accepted need not be made. *Richards* v. *Allen*, 17 Maine, 296 ; *Newcomb* v. *Brackett*, 16 Mass. 161. As the defendant could not legally accept more than was justly his due, more need not be tendered. All that was due was tendered him. We think the tender was therefore sufficient.

2. Another ground of defense is that the officer's return on the execution does not show a demand of the property ; that it shows a demand of the debtor's interest in the schooner only, and no demand for the cigars. No such demand was necessary. The defendant had sold the cigars. Of what use would a demand be ? The law is well settled that a demand that cannot be complied with need not be made. If a deputy sheriff release goods attached, no demand upon him for the goods is necessary to make him liable to the creditor for their value. *Cooper* v. *Mowry*, 16 Mass. 5. It is there said to be a settled rule of law that a demand, otherwise necessary, becomes useless and unnecessary when the party on whom it is to be made has disabled himself from complying with it by his own act. And where the receipter for a ship, which had been attached, promised to re-deliver her on demand, and afterwards permitted the owner to take her to sea, it was held that no demand was necessary to make him liable. The ship having gone to sea the demand, if made, could not be complied with. No demand was therefore required. So in this case. The cigars having been sold, a demand if made could not be complied with. None was therefore required. *Webster* v. *Coffin*, 14 Mass. 196.

3. Another ground of defense is that the officer's return of *nulla bona*, being dated two days after the return day of the execution, does not show that it was in his hands while it was in force, and that the search for goods was made by virtue of it. This is, perhaps, true of so much of the return as relates to the search for property of the debtor. But this is not the whole of the officer's return. Under an earlier date he certifies that he demanded of the defendant the debtor's interest in the schooner, and that he did so by virtue of the execution. This shows that the execution was in

his hands long before the return day. We think the two returns, taken together, show with sufficient certainty that the search for goods was in the lifetime of the execution, and that what was done by the officer was done by virtue of it. This brings the case within the principle of the decision in *McLellan* v. *Codman*, 22 Maine, 308.

4. Another objection to the officer's return is that as it was originally made, it was fatally defective, and that it was not competent for the officer to amend his return by adding the certificate of *nulla bona* after the return day had expired. That it was competent for the court to permit the officer thus to amend his return we cannot doubt. Such amendments are almost of daily occurrence.

5. It is claimed that the attachment was dissolved by payment of the note declared on in the original suit after the action was brought. Paid by whom? Not by the maker, surely. The case shows that one of the indorsers or his administrator paid the amount due upon the note to the holder, and that it was then agreed that the suit should go on for the benefit of the party thus paying. We hardly think it will be seriously claimed that such a payment would be a bar to the further prosecution of that suit, and much less a bar to this suit; and if not, we perceive no ground on which it can be claimed to operate as a dissolution of the attachment. We think this objection is not well-founded.

6. We now come to the question of damages. It is said that when the defendant disclosed in the original suit, he held a note against one Stanwood for $1,000, which he took on a sale of cigars owned by him and Neal, jointly; that Stanwood has since gone into bankruptcy, and that only twenty per cent of the amount due upon the note has been paid; and he claims that he should have deducted, by way of reduction of damages, one-half of the amount of the loss upon the note. We think not. The amount to be paid or tendered the defendant was definitely ascertained and adjudicated upon in the trustee suit. The greater portion of that amount has been paid him by a sale of the cigars. The balance has been

Woods *v.* Cooke.

tendered him. Upon such tender it was his duty to deliver to the officer holding the execution, the unsold portion of the property on account of which he was adjudged trustee. This he refused to do. He thereupon became liable to the creditor for its value. To allow him now to go behind the former adjudication of the court, and show that it was wrong, would not only be in violation of well-settled rules of law, and the express provisions of the statute applicable to such cases, but against public policy, as it would tend to encourage future disobedience to the judgments and decrees of the court, in the hope that thereby a similar advantage might be gained. The cigars having been sold by the defendant and the proceeds accounted for, the true measure of damages is the value of the debtor's interest in the schooner, less the balance due from him to the defendant as ascertained at the time the tender was made.

The report states that if the action can be maintained the damages are to be assessed by the court. Whether it was intended that the damages should be assessed by the law court or a judge at *nisi prius* is not clear. But as the assessment is not difficult, and if done by the law court will save further litigation and bring the case to a more speedy termination, we have concluded to make it.

The evidence satisfies us that the fair value of the debtor's interest in the schooner was $2,000. We are also satisfied that the amount justly due the defendant, May 17, 1869, was $608.26. Balance $1,391.74. To this interest should be added from the time of the demand. *Judgment for plaintiff for* $1,391.74, *and interest from May* 17, 1869.

APPLETON, C. J.; KENT, BARROWS, and DANFORTH, JJ., concurred.